**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAPA EXTRUSIONS, INC.** *f/k/a* *Alcoa Extrusions, Inc.* | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-2827** |
| | : | |
| **v** | : | |
| | : | **(JUDGE MANNION)** |
| **LIBERTY MUTUAL INSURANCE COMPANY,** *et al.* | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Sapa Extrusions Inc. (Sapa), formerly known as Alcoa Extrusions, Inc. (Alcoa), sold aluminum window profiles to Marvin Lumber and Cedar Company (Marvin), a company that manufactured windows and doors. Those windows and doors were later used in the construction of houses and other buildings. In September 2010, Marvin sued Sapa, alleging that Sapa had knowingly sold defective window profiles that failed prematurely and caused damage to the buildings where they were used. After over three years of litigation, the parties agreed to settle the case confidentially. *Marvin Lumber and Cedar Co., et. al., v. Sapa Extrusions, Inc.,* 10-cv-3881, Docket Entry 595 (D. Minn., Oct. 22, 2013)(Kyle, J.). Approximately one month after settling, the plaintiff brought the present suit against various insurance carriers it had used between 1999 and 2010. Relevant to this decision, the plaintiff sued the Insurance Company of the State of Pennsylvania (ICSOP), National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), and Gerling-Konzern Company (Gerling) for breach of contract. (Doc. 1).

Specifically, Sapa alleges that the insurance companies must pay the settlement and litigation costs per the terms of the insurance contracts. Moreover, Sapa generally claims the insurance companies also breached a duty to defend per the insurance contracts. The above referenced defendants have filed motions to dismiss. The court finds discovery is necessary to determine when the damages manifested, so the motion made jointly by ICSOP and National Union will be **DENIED**. The court will **GRANT** Gerling's motion insofar as the plaintiff has failed to allege enough damages to trigger the policy's terms. The court will also **DISMISS WITHOUT PREJUDICE** the claims against National Union's umbrella policies for the same reasons that apply to Gerling.[1] However, the court will grant the plaintiff leave to file an amended complaint to cure these deficiencies with claims against both Gerling and National Union.

## I.    FACTUAL BACKGROUND

As noted above, this case springs from a protracted lawsuit between the

---

[1]Although National Union did not explicitly raise the issue in its motion or brief in support, in order to maintain consistency in the court's rulings and orders, the court will *sua sponte* dismiss those claims. "There are times when a court may *sua sponte* raise the issue of the deficiency of a pleading under Rule 12(b)(6) provided that the litigant has the opportunity to address the issue either orally or in writing." *Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990). As Gerling raised nearly an identical issue in its motion to dismiss, the plaintiff has had the opportunity to respond to this argument already. Therefore, dismissal is appropriate at this stage.

plaintiff and Marvin, who used the plaintiff's window profiles in various construction projects. In that suit, Marvin sought damages stemming from the plaintiff's defective window profiles that failed at an unacceptable rate after installation. (Doc. 1, ¶14).[2] Although Marvin's complaint alleges that the plaintiff changed its policies and procedures sometime in 2003, the plaintiff's complaint notes that Marvin sought damages for replacing windows that were sold dating back to 1999. (Id., ¶20). Marvin also sought to be compensated for repairing other property damage that resulted from the faulty windows. This prior suit settled before trial and the parties entered into a confidential settlement agreement. The terms of that agreement have not been disclosed to the court at this time. (Id., ¶21).[3]

Between 1999 and 2010, the plaintiff maintained a series of insurance policies with various companies. After the Marvin suit settled, the instant case was filed alleging that the insurance carriers breached their contracts by not reimbursing the plaintiff for the litigation or the cost of settlement. The plaintiff

---

[2]Unless otherwise noted, all references are to the plaintiff's complaint and attached exhibits. (Doc. 1).

[3]In its brief, Gerling states that the plaintiff has submitted a copy of the settlement agreement for review. (Doc. 47, p. 6). Although Gerling has offered to file this agreement under seal for the court's review, given the reasoning and discussion below, it is unnecessary at this juncture to do so.

had umbrella policies with National Union that ran for the following periods:

1.    Policy No. BE3577478 - July 1, 1998 to July 1, 1999 (Exh. D)

2.    Policy No. BE 7016246 - July 1, 1999 to July 1, 2002 (Exh. E)

3.    Policy No. BE 2131282 - July 1, 2002 to July 1, 2003 (Exh. F)

4.    Policy No. BE 2860270 - July 1, 2003 to July 1, 2004 (Exh. G)

5.    Policy No. 27-471-704 - Jan. 1, 2010 to June 1, 2010 (Exh. AA)

(Id., ¶34-37). The policies prior to 2010 were with the plaintiff's predecessor company, Alcoa. These policies will be referred to collectively as the "National Union Policies." From 1998 through July 2002, the policy limits were $40,000,000 per occurrence, and that was increased to $50,000,000 in the policy periods between 2002 and 2004. The 1998 and 1999 policies covered any damages that were in excess of the underlying policies from Liberty Mutual Insurance Company with limits set at $10,000,000 per occurrence or $30,000,000 general aggregate. (Exh. D, E). The 2002 and 2003 policies covered any damages that were in excess of the underlying policies that had limits of $10,000,000 per occurrence with no aggregate limit and $5,000,000 per occurrence with no aggregate limit, respectively. (Exh. F, G). The 2010 policy had a $14,000,000 limit per occurrence and covered only damages in excess of the underlying ICSOP policy that had a $1,000,000 limit. (Id., ¶152).

4

In terms of reimbursing the insured for damages, the National Union policies

state in relevant part that National Union:

> [W]ill pay on behalf of the insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the insured under an insured contract because of . . . property damage . . . that takes place during the Policy Period and is caused by an occurrence happening anywhere in the world.

(Doc. 1, ¶41).[4] The policy also provides that National Union

> shall have the right and duty to defend any claim or Suit seeking damages covered by the terms and conditions of this policy *when the applicable limits listed in the Schedule of Retained Limits or Schedule of Underlying Insurance have been exhausted by payment of claims to which this policy applies*.

(Id., Exh. G)(emphasis added). Lastly, under the section "Limits of Insurance,"

the policy reads:

> If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by *payment of one or more claims* that would be insured by our policy we will: 1. In the event of reduction, pay in excess of the reduced underlying limits of insurance; or 2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

---

[4]The 2010 policy's language differs slightly after the term "property damage." It continues, ". . . to which this insurance applies or because of . . . property damage . . . to which this insurance applies by the insured under an insured contract." (Doc. 1, ¶153).

(Exh. D)(emphasis added).[5] The plaintiff has alleged that it complied with all terms of the contract and tendered the claim to National Union, but that National Union has refused to provide any costs.

The plaintiff and ICSOP had three policies that covered periods from June 2008 through June 2011. The policies covered the dates listed below:

1.   Policy No. GL 721-90-79 - June 1, 2008 to June 1, 2009 (Exh. X)

2.   Policy No. GL 091-26-40 - June 1, 2009 to June 1, 2010 (Exh. Y)

3.   Policy No. GL 226-45-02 - January 15, 2010 to June 1, 2011 (Exh. Z)

(Doc. 1, ¶137-39). The policies covering the periods from June 2008 through June 2010 had a $15,000,000 limit per occurrence with a $250,000 deductible. The last policy had a $1,000,000 limit per occurrence with the same deductible.  The policies provide that ICSOP:

> [W]ill pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 1, ¶143). The ICSOP policies were amended to include a provision that states that ICSOP "will have the right but not the duty to defend any 'suit' . . ." (Id., Exh. X, Y, Z). The plaintiff alleges that it tendered the claim to ICSOP and

---

[5]Although the policy language varies slightly with each contract, National Union agrees that the policy language is materially the same. (Doc. 20, p. 7).

complied with all terms of the contract. ICSOP has not provided any coverage decision and has refused to reimburse any costs. (Id., ¶146-48).

Gerling issued four excess liability policies to the plaintiff's predecessor, Alcoa, between 1999 and 2007. The applicable dates of those policies are listed below:

1.    Policy No. 509/DL286399 - July 1, 1999 to July 1, 2002 (Exh. H)

2.    Policy No. 509/DL376002 - July 1, 2002 to July 1, 2003 (Exh. I)

3.    Policy No. 576/UK7365500 - July 1, 2005 to July 1, 2006 (Exh. V)

4.    Policy No. 576/UL7365500 - July 1, 2006 to July 1, 2007 (Exh. W)

(Id., ¶48-49, 129-30). The policies will be referred to collectively as "the Gerling policies." The 1999 and 2002 policies followed the terms and conditions of the 1999 and 2002 National Union policies noted above. Both of have limits of $50,000,000 per occurrence. For the 1999 policy to apply, the plaintiff would need to show damages in excess of $50,000,000, thereby exhausting the underlying policies ($40,000,000 from National Union and $10,000,000 from Liberty Mutual). For the 2002 policy to apply, the plaintiff would need to show damages in excess of $60,000,000, thereby exhausting the underlying policies ($50,000,000 from National Union and $10,000,000 from ACE USA). In terms of the 2005 and 2006 policies, the plaintiff would need to demonstrate damages in excess of $55,000,000, thereby exhausting the underlying policies ($25,000,000 from Great American Assurance Company and $30,000,000 from ACE USA). The plaintiff has alleged that it

complied with all terms of the Gerling policies and tendered the claim to Gerling. To date, Gerling has not issued a coverage decision and has refused to pay any costs to the plaintiff. (Doc. 1, ¶¶53-55, 134-36).

## II.    PROCEDURAL BACKGROUND

This case commenced on November 19, 2013 when the plaintiff filed its thirty-count complaint against the defendants. (Doc. 1). The plaintiff alleges claims for breach of contract against each defendant for failure to defend and failure to pay the costs of the prior litigation and settlement between the plaintiff and Marvin. Relevant to the instant motion, counts 3, 4, 5, 6, and 30 allege breach of contract against National Union. Counts 27, 28, and 29 allege breach of contract against ISCOP. Lastly, counts 7, 8, 25, and 26 claim breach of contract against Gerling. (Doc. 1). On February 3, 2014, National Union and ICSOP jointly filed a motion to dismiss and brief in support. (Doc. 19,. 20). The plaintiff filed its brief in opposition approximately two weeks later. (Doc. 22). National Union and ICSOP filed a reply brief on March 4, 2014. (Doc. 27). Gerling filed a motion to dismiss and brief in support on April 14, 2014. (Doc. 42, 43). The plaintiff filed its brief in opposition two weeks later, (Doc. 45), and Gerling filed its reply brief on May 12, 2014. (Doc. 47). The issues are now fully briefed and ripe for the court's decision.

## III.    STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the

complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)*; Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## IV.     DISCUSSION

### A. The National Union and ICSOP Policies

National Union and ICSOP attack the sufficiency of the plaintiff's complaint on two grounds. First, they argue that the plaintiff has not alleged any property damage that occurred during the relevant insurance periods. For National Union that would be July 1, 1998 through July 1, 2004 and January 1, 2010 through June 1, 2010. For ISCOP the relevant period would be June 1, 2008 through June 15, 2010. Second, they argue that any claim that alleges they owed the plaintiff a duty to defend must be dismissed because no such duty is imposed by the contract.

The parties appear to agree that this case depends on when the "occurrence" happened under Pennsylvania law. The parties centrally dispute what legal theory is relevant to the facts presented here - a manifestation trigger theory or a multiple trigger theory. Pennsylvania has generally adopted a manifest trigger when dealing with damages that spring from a singular event. *See City of Erie, Pa. v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 164 (applying manifest trigger test to malicious prosecution claim that manifests at initiation of prosecution). Under that theory, an injury "occurs" when damages stemming from the negligent act first manifest in a way that would put a reasonable person on notice of such an injury. *Cincinnati Ins. Co. v. Devon Intern., Inc.,* 924 F.Supp.2d 587, 592 (E.D.Pa. 2013)(quoting *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 861 (Pa.Super. 1986)). The multiple trigger test has

been applied where the injury itself manifests a considerable time after the initial negligence takes place. *Consulting Engineers, Inc. v. Insurance Co. of North America*, 710 A.2d 82, 87 (Pa. Super. 1998). The logic behind the multiple trigger test is to protect the insured. If the manifestation theory is applied to cases where the damage only manifests after a significant delay, insurers would avoid liability even thought the harm occurred while covered by an earlier policy. *Id.* However, that theory has only been applied in toxic tort cases, such as asbestosis cases, where a significant period of time elapses before any injury becomes apparent. *Id.* (citing *J.H. France Refractories v. Allstate Insurance Co.*, 626 A.2d 502 (Pa. 1993)). Although it is unclear at this time what test applies to this case, the court need not reach that issue.

Assuming without deciding that the manifestation trigger theory applies as National Union and ICSOP contend, the complaint contains sufficient allegations to survive a motion to dismiss. The plaintiff has alleged that Marvin sought damages stretching back to 1999. Although National Union and ICSOP point to the dates referenced in Marvin's complaint against the plaintiff, these are insufficient to overcome the plaintiff's well-pleaded complaint. If there were damages that occurred in 1999, it is plausible that the plaintiff may have become aware of such damages anytime between 1999 and when the earlier suit between the plaintiff and Marvin was filed in 2010. As such, discovery is necessary to determine when those damages manifested and when plaintiff became aware of them.

Turning to the second issue, the plaintiff admits it is not seeking any recovery under a theory that National Union or ICSOP owed it a duty to defend in its suit against Marvin. (Doc. 22, p. 13-15). The plaintiff is, however, seeking reimbursement for the cost of any such defense for claims implicated under the various insurance contracts. Given the plaintiff has conceded that it seeks to recover the cost of the prior litigation rather than on an independent basis of a breach of a duty to defend, those claims are **DISMISSED WITH PREJUDICE** as to National Union and ISCOP. The plaintiff may only seek damages stemming from the cost of the prior litigation.

Further, National Union contends that there is no claim for litigation costs because the plaintiff has failed to allege exhaustion of the underlying policies. As this argument was raised by Gerling, the court will discuss whether the plaintiff has sufficiently plead damages in excess of the underlying limits in order to implicate National Union's umbrella policies and Gerling's excess policies.

B. The Gerling Excess Policies and National Union Umbrella Policies

Gerling argues that because its policies were excess insurance, the plaintiff must plead damages above the underlying policy limits in order to state a claim. Although not raised by National Union explicitly, this same line of argument applies to its umbrella policies. Sapa argues that under Pennsylvania Law, "only . . . the loss be in excess of the amount of underlying coverage." (Doc. 45, p. 10). The Third Circuit has predicted that "the

13

Pennsylvania Supreme Court would adopt the widely-followed rule that the policyholder may recover on the excess policy *for a proven loss* to the extent it exceeds the primary policy's limits." *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996)(emphasis added). Where the insurance only triggers upon payment by an underlying insurance company, the umbrella or excess policy will only be triggered through a payment that is in excess of the underlying limits. *See Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 910 (Pa.Super. 2013)(holding that when the insurance contract requires "payment of judgment or settlements" a duty to defend is only triggered when actual payment is made). The court agrees with Gerling that the plaintiff must plead losses or damages in excess of the underlying policy limits for the years the umbrella or excess policies to apply. Moreover, given that National Unions umbrella policies require exhaustion of the underlying policies, the plaintiff must demonstrate that there has been actual payment of settlement in excess of the underlying limits for each year.

The plaintiff has already argued in its briefs that it has damages that exceed the limits of the policies underlying the Gerling coverage. These facts need to be alleged in the complaint. The plaintiff cannot amend its complaint in a brief or in filings with opposing counsel. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.3d 173, 181 (3d Cir. 1988)(discussing that a complaint cannot be amended by a brief in opposition of a motion to dismiss). If the plaintiff cannot establish plausible losses for each year in

14

excess of the underlying limits, then the excess and umbrella policies will not be implicated.

For those reasons, the claims against Gerling and National Union (Counts 3, 4, 5, 6, 27, 28, 29, 30) are dismissed. The court will grant the plaintiff leave to amend its complaint. Once the plaintiff pleads exactly which years it suffered damages in excess of the underlying limits, then discovery will be necessary to determine how the damages will be apportioned and whether, in fact, the excess and umbrella policies are triggered at all.

## V.    CONCLUSION

For the reasons discussed above, ICSOP's motion is **DENIED**. National Union's motion is **GRANTED IN PART** insofar as the plaintiff has failed to plead sufficient damages to trigger the umbrella policies. In all other respects, National Union's motion is **DENIED**. Gerling's motion is **GRANTED**. The plaintiff will further be granted leave to amend its complaint. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: July 28, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2827-01.wpd